**Margaret PINTO, Plaintiff-Appellant,**

**v.**

**CLAIROL, INC., Defendant-Appellee.**

**No. 15198.**

United States Court of Appeals
Sixth Circuit.

Nov. 26, 1963.

Henry A. Triplett, Louisville, Ky., Boone & Triplett, Louisville, Ky., on brief, for appellant.

John A. Fulton, Woodward, Hobson & Fulton, Louisville, Ky., for appellee.

Before CECIL, O'SULLIVAN and PHILLIPS, Circuit Judges.

PER CURIAM.

Plaintiff-appellant, Margaret Pinto, sued defendant-appellee, Clairol, Inc., for damages alleged to have been suffered by her from using a hair dye, marketed by defendant under the trade name of "Miss Clairol." Her case was tried to a jury which found for defendant. Plaintiff's appeal alleges that the District Judge erred in submitting to the jury defendant's claim that she was guilty of contributory negligence. The contributory negligence relied on by defendant was plaintiff's failure to take a patch test to insure that she was not allergic to a certain chemical in the dye. Defendant's package warned and directed that such test should be made prior to use of this product.

Plaintiff had been using defendant's hair dyes over a number of years. Until the occurrence here involved, she had had the dyes applied by a professional beautician, getting a "complete job" about once a year with an occasional intervening "touch up." She had had patch tests on some of these occasions, usually when she had a full treatment with a change of color. There were times, however, when she had not had such tests.

Prior to the application in question, to wit: a full treatment with Miss Clairol No. 57, on July 29, 1960, plaintiff had suffered no ill effects from using defendant's products. On this day, without taking a patch test, a home application of the dye was given to plaintiff by her sister. The application was made on July 29, at about eleven o'clock in the morning.

Plaintiff experienced no unusual consequences from the operation until about 3:00 P.M. on July 31st, approximately fifty-one hours after the application. Plaintiff then developed a dermatitis which has continued to the present and, according to her doctor's testimony, may remain with her permanently.

It is undisputed that defendant's hair dye, a coal tar product, contains a chemical which can cause skin irritation to a person allergic to it. Under the Food & Drug Act (Title 21, USCA, § 362), defendant's package was required to, and did, bear a label as follows:

"Caution—This product contains ingredients which may cause skin irritation in certain individuals and a preliminary test according to accompanying directions should first be made."

The bottle of dye and the box containing it exhibited this label as well as a set of instructions which informed prospective users on the subject of "hypersensitivity" and advised that the method employed to detect skin hypersensitivity is the "Preliminary Patch or Skin Test." Instructions as to how to apply the test stated:

"MAKE THIS PRELIMINARY PATCH OR SKIN TEST 24 HOURS BEFORE EVERY APPLICATION (full head or retouch) to ascertain whether a person is hypersensitive or allergic to this product."

The directions for making the skin test further stated:

"The hair dye contained in this package must never be used for dyeing the hair unless a preliminary skin test has been made. The skin test must be made each and every time before the hair is to be dyed, regardless of whether or not a skin test has been made at some time previously. * * * The test should be read between 24 and 48 hours after the application."

Plaintiff's only excuse for not taking a patch test before her July 29th home application of the hair dye was, as stated

by her, "Because I was not an allergic person. I was not hypersensitive. Those instructions say for hypersensitive or persons suffering with an allergy, which I do not have." Her sister, who applied the dye, expressed a like interpretation of the instructions given. The instructions, however, were clear in their advice that the dye should *never* be used without a preliminary patch test, and that such test was to be made *each and every time* the dye was used, regardless of whether or not a skin test had been made previously.

Medical evidence disclosed that persons could develop a sensitivity to coal tar dyes notwithstanding previous immunity. A patch test made on plaintiff in 1962, by a doctor employed by defendant, developed a reaction within about twelve hours, thereby demonstrating her then sensitivity to the dye.

The District Judge instructed the jury:

"It was the duty of the plaintiff, Mrs. Margaret Pinto, to exercise ordinary care for her own safety in connection with the use of the product, Miss Clairol, and if you believe from the evidence that the plaintiff, Mrs. Pinto, refused or declined to follow the instructions of the defendant, Clairol, Incorporated, and failed to take a preliminary test according to the directions accompanying the Clairol product which she applied to her hair on July 29, 1960, and as a result of her failure to follow such directions she contributed to the injuries of which she complained, then the law of this case is for the defendant, Clairol, Incorporated, and the jury should so find."

Appellant argues that her failure to take the required patch test could not have causally contributed to her injury because the skin irritation did not develop until 51 hours after application of the dye, whereas the instructions say that the "test (patch) should be read between 24 and 48 hours after the application." From this, it is urged that a patch test, had it been made, might not have dis-

closed plaintiff's sensitivity within 48 hours or prior to her applying the full treatment, and that the instructions were thus an inadequate warning. The jury could have arrived at such a conclusion or, under the evidence, could have concluded that a taking of the patch test would have disclosed plaintiff's sensitivity in time to warn her against going forward with the dyeing of her hair. The jury was not required to accept as the whole truth the 51 hour interval between the application of the dye and the onset of the irritation. They, likewise, under the medical evidence, could have found that a patch test would have disclosed plaintiff's sensitivity in time to warn her against going on.

The District Judge submitted the question of defendant's alleged negligence (failure to give adequate warning) and plaintiff's contributory negligence (failure to follow instructions) to the jury. This was proper.

Judgment affirmed.